**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FERNANDO RAMIREZ,<br><br>                            Petitioner,<br>  vs.<br><br>M. HOSHINO, Secretary,<br><br>                          Respondent. | CASE NO. 12-cv-1836-LAB-MDD<br><br>REPORT AND RECOMMENDATION RE: PETITION FOR WRIT OF HABEAS CORPUS<br>[ECF No. 1] |

     This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d)(1) of the United States District Court for the Southern District of California. For the reasons set forth herein, the Court **RECOMMENDS** the Petition be **DENIED**.

### I. INTRODUCTION

     On July 16, 2009, Petitioner Fernando Ramirez ("Petitioner") pled guilty to three counts of robbery. (Lodg. 10 at 40, 42). Petitioner claims that both his counsel and the prosecutor coerced his guilty plea. (ECF

No. 1 at 2). Petitioner and his brother were each charged with attempted carjacking, three counts of robbery, two counts of assault likely to produce great bodily injury, and two counts of battery. (Lodg. No. 5 at 4). Though Petitioner initially rejected the prosecutor's plea offers and expressed his desire to go to trial, he later accepted a "package deal" that required both Petitioner and his brother to plead guilty. (*Id.* at 5). If either did not accept the deal, both would face trial on all charges and Petitioner's brother would face additional charges stemming from an unrelated incident. (Lodg. 10 at 26-27). These convictions could have resulted in a life sentence for Petitioner's brother pursuant to California's three strikes rule. (*Id.* at 31). The package deal reduced Petitioner's sentence from a potential of almost 50 years imprisonment to 15 years. (*Id.* at 23).

## II. PROCEDURAL HISTORY

On July 27, 2008, Petitioner and his brother were arrested and charged with attempted carjacking, robbery, assault likely to produce great bodily injury, and battery. (Lodg. No. 5 at 4). On July 16, 2009, Petitioner pled guilty to three counts of robbery in San Diego Superior Court Case No. SCS 221413. (Lodg. No. 1 at 52-54).[1] On August 31, 2009, Petitioner filed a motion to withdraw his guilty plea. (Lodg. No. 1 at 66-68). On September 25, 2009, the trial court denied Petitioner's motion. (Lodg. No. 10 at 96). On September 30, 2009, the trial court sentenced Petitioner to a 15-year prison term in accordance with the plea agreement. (Lodg. No. 1 at 123).

On April 23, 2010, Petitioner appealed to the California Court of

---

[1] A change of plea hearing was held on July 16, 2009. (Lodg. No. 10 at 35-42). Petitioner appears to have signed the change of plea form on June 28, 2009. Petitioner's attorney, the prosecutor, and the trial judge signed the change of plea form on July 16, 2009, after the plea hearing. (Lodg. No. 1 at 54).

1 Appeal, claiming that his counsel and the prosecutor coerced him to plead
2 guilty.  (Lodg. No. 2 at 18).  Specifically, he claimed that the prosecutor
3 threatened to file additional charges against his brother, which could
4 have resulted in a life sentence.  (*Id.*).  Petitioner further claimed that his
5 counsel urged him to "take the deal to avoid destroying [his brother's]
6 life."  (*Id.*).  On April 19, 2011, the Court of Appeal affirmed the trial
7 court's denial of Petitioner's motion to withdraw his guilty plea.  (Lodg.
8 No. 5 at 22).  On May 31, 2011, Petitioner filed a petition for review in
9 the California Supreme Court.  (Lodg. No. 6).  On July 27, 2011, the
10 petition was denied without comment.  (Lodg. No. 7).
11     On April 9, 2012, Petitioner filed a petition for writ of habeas
12 corpus in California Superior Court.  (Lodg. No. 8).  Petitioner claimed
13 that his counsel and the prosecutor coerced him to plead guilty in order
14 to benefit his brother.  (*Id.* at 3).  On April 25, 2012, the Superior Court
15 found Petitioner failed to factually support his claim that he was coerced
16 to plead guilty and denied his petition.  (Lodg. No. 9 at 4).
17     On July 25, 2012, Petitioner, proceeding *pro se*, filed the instant
18 Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. §
19 2254, challenging his guilty plea.  (ECF No. 1).  Petitioner claims that his
20 guilty plea was involuntary because his counsel and the prosecutor
21 coerced him to accept it by discussing potentially serious consequences to
22 his brother if Petitioner rejected it.  (*Id.* at 6-7).  On December 11, 2012,
23 Respondent answered the Petition.  (ECF No. 10).
24                **III.  STATEMENT OF FACTS**
25     "[A] determination of a factual issue made by a State court shall be
26 presumed to be correct."  28 U.S.C. § 2254(e)(1).  The Petitioner has "the
27 burden of rebutting the presumption of correctness by clear and
28 convincing evidence."  *Id.*; *see also Jeffries v. Wood*, 114 F.3d 1484, 1500

(9th Cir. 1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997) (stating that federal courts are required to "give great deference to the state court's factual findings.")). Accordingly, the following facts are taken from the California Court of Appeal's opinion:

> On the evening of July 27, 2008, Fernando and Jesse (together, Ramirez brothers) approached a vehicle in which Yvette Swanson, Nicole Rodriguez and Selina Munoz (collectively, the women) were seated. When the women asked the Ramirez brothers to leave, [the brothers] assaulted Swanson and demanded the women's cell phones. During the incident, Swanson heard the Ramirez brothers yell, "San Fernando LA gangs."
> Swanson next handed one of the Ramirez brothers her purse. Munoz demanded that the Ramirez brothers stop beating Swanson. Believing that Munoz had "disrespected" him, Fernando struck Munoz. The women got out of the car and ran to a neighbor's house.
> . . .
> Jaclyn Faulkner and Nicole Nixon witnessed the incident. When Nixon called 911, Fernando ran toward Nixon. . . struck her and grabbed her purse.
> . . .
> Jesse then grabbed Rodriguez's purse and started running. Rodriguez gave chase. As they ran, the Ramirez brothers repeatedly yelled "LA County."
> When the police arrived, Rodriguez directed the officers to a nearby street where she had followed the Ramirez brothers. Officers found them sitting in front of a house; both Fernando and Jesse admitted they were members of the "San Fer gang." The officers found property belonging to Nixon and Swanson inside a trash can located on the house's shared driveway. The Ramirez brothers were identified at the scene.
> . . .
> In January 2009, the prosecutor offered Fernando and Jesse a plea deal. In return for guilty pleas from *both* Fernando and Jesse, the prosecutor agreed to a prison sentence of 12 years for each brother. Fernando and Jesse rejected that offer, as well as a subsequent offer made by the prosecutor.
> On July 16, 2009, prior to hearing Fernando's section

995 motion to dismiss,[2] the court informed Fernando that his maximum possible sentence if convicted was 47 years eight months. The Ramirez brothers understood the existing plea offer as well as their maximum exposure. Before accepting their not guilty plea, the trial court allowed Fernando and Jesse to confer outside the courtroom to consider the prosecutor's renewed offer, which was a "package deal." When they returned to the courtroom, Jesse wanted to accept the plea deal but could not do so because Fernando wanted to reject the offer and the deal was contingent on both of them accepting it.

The prosecutor revealed if both Fernando and Jesse accepted the plea deal, charges would not be brought against Jesse stemming from an incident at the George Bailey Detention Facility (George Bailey incident), which could result in a "third strike" against Jesse under California's three strikes law. The George Bailey incident had been caught on video surveillance. The court cautioned, "I don't know how much that [George Bailey incident] should factor into [Fernando's] thinking," to which Fernando replied, "It does. It matters to me, your honor." Jesse next told Fernando, "It's up to you. I signed it [the plea deal]. Whatever you want to do. It's up to you. It's going to be a third strike at life and 40 years. This is not going to make a difference. . . If they do pick up another strike."

Concerning Jesse's potential third strike, the court reiterated: "It's something for [Jesse] to consider, *but it's not something for Mr. Fernando Ramirez to consider*." (Italics added.) The following colloquy then took place between Fernando and Jesse as the each weighed their options:

> "[JESSE]: It's up to you. I'll go to trial. Don't worry about whatever I got going on with this and that.
> "[FERNANDO]: That's the only thing that bothers me.
> "[JESSE]: It's up to you. Whatever you want to do. I signed it. I want you to sign it because you want, not because of me. [¶] . . . [¶]
> "THE COURT: He's telling you he doesn't mind

---

[2] Fernando moved under section 186.22, subdivision (b)(1) to dismiss the gang allegations as to all counts (section 995 motion). As discussed *post*, the trial court ultimately did not rule on this motion, although its tentative was to deny it.

> spending life in prison, that's what he's telling you. So it's really your call. . . [¶] . . . [¶] You're looking at 15 versus almost 50. It's up to you. Do you want to get out while you're in your 30's or get out in your 60's? Okay.
> "[FERNANDO]: Accept."

In response, the court stated: "It seems like a wise decision to me. . . [C]ertainly Fernando made the right call. And Jesse was right to tell him to think of his own self, right?" Fernando then remarked, "I did it for him [Jesse], not for myself, but–" The court then noted its "tentative was to deny the [section] 995 [motion] in its entirety." The plea agreement reduced Fernando's potential prison sentence from nearly 50 years to 15. The court and defense counsel both believed that the evidence against Fernando was compelling, it was "not a very defensible case" and if he faced a jury, Fernando was likely to be convicted on all charges.

The trial court questioned Fernando and Jesse to ensure they both understood the ramifications of their decisions to plead guilty. Fernando testified that he had not "had any drugs, alcohol or medication in the last 24 hours" including "flu, allergy medication." Fernando also confirmed that he had adequate time to talk to his attorney, and was "satisfied" with his attorney's representation and that he has "read, understood, and agreed to everything in" the change of plea form. The court reviewed the details of the plea bargain and Fernando acknowledged to the court that no one had made promises to or threatened him in connection with the plea bargain and he was "entering this plea freely and voluntarily."

Fernando admitted the allegations of all counts and priors, waived his right to a jury trial, pled guilty to the charges in counts 2, 3 and 4 and admitted as a serious felony a prior conviction. . . As part of the negotiated plea, the prosecution agreed Fernando would receive a 15-year sentence and the balance of the second amended information would be dismissed.

On August 17, 2009, Fernando requested a *Marsden*[3] hearing as a first step to the removal of his attorney and

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). On January 21, 2009, Fernando made an earlier *Marsden* motion regarding a previous defense attorney, which the court denied.

withdrawal of his guilty plea.[4] The court read Fernando's letters to the court dated July 21 and August 16, 2009, in which Fernando asked to withdraw his plea because he had been "forced into the deal" and he had taken medication that impaired his judgment when he "agreed" to plead guilty.

The court also reviewed e-mails to Fernando from his defense counsel confirming their discussions regarding plea offers.[5] Fernando explained: "Your honor, I just feel like [defense counsel's] been pressuring me to take deals. I never agreed to take no deal, and I just feel that, as far as being counsel, he wasn't counseling me in my efforts to doing the case." Other than alleging defense counsel had pressured him to accept the deal, Fernando expressed no dissatisfaction with his counsel's representation. In fact, Fernando's defense counsel was an experienced attorney who at that time had handled more than 100 felony cases and who had met with Fernando several times to review his plea offers and potential exposure.

During the hearing, Fernando eventually acknowledged: "I was really here to withdraw the plea. I didn't know what the *Marsden* was about." In denying Fernando relief, the court concluded: "[W]e're talking about a difference of tactics more that a difference of really being pressured. So I don't find this rises to the level of a relationship conflict that would breach the attorney/client relationship and I don't think that Mr. Ramirez has sustained his burden in the *Marsden*; therefore, the *Marsden* is denied.

At another *Marsden* hearing on August 31, 2009, Fernando repeated the allegations that his attorney had pressured his into signing the plea agreement. After hearing

---

[4] Jesse also sought to withdraw his guilty plea because he felt the evidence against him in connection with the George Bailey incident was "inadequate." That issue is not before us, however.

[5] The dates of these letters and e-mails were incorrectly identified in the record. The notice of sealed document filed March 29, 2010, contained a "letter written by Attorney Jayakumar dated July 29, 2009," but the document was actually a handwritten letter by Fernando to Judge Rubin dated July 21, 2009. The emails cited as dated July 29 and July 21, actually were dated June 29, and July 1, 2009, respectively.

- 7 -                                           12cv1836-LAB (MDD)

from Fernando's attorney, the court again denied Fernando's *Marsden* motion.

On September 25, 2009, a final *Marsden* hearing was held. The court denied Fernando's *Marsden* motion for a third time, ruling Fernando has "fail[ed] to meet the burden of proof required under *Marsden*."

On September 30, 2009, the court denied Fernando's motion to withdraw his guilty plea. In so doing, the court reviewed the transcript of the July 16, 2009 hearing and noted Fernando had testified under oath that he had not been threatened or promised any inducements, his plea was voluntary, he was not on any medication, and cited to where Fernando was advised it was his own decision whether to accept the plea deal. The court further noted Fernando was advised not to consider Jesse's fate, and that Jesse did not care whether Fernando accepted the plea agreement.

The trial court found Fernando's motion to be a case of "buyer's remorse" and noted that Fernando may have been trying to gain a tactical advantage because the prosecution would be unprepared for trial. The court thus ruled Fernando has not met his burden by clear and convincing evidence, much less a preponderance of the evidence, to show his guilty plea was involuntary.

(Lodg. No. 5 at 2-9) (quoted from the opinion of the Court of Appeal including the original footnotes, with minor edits for clarity).

## IV.  **STANDARD OF REVIEW**

Title 28, United States Code, § 2254, subsection (a) provides the scope of federal review of state habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

The Petition was filed after the enactment of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### A.   Clearly Established Federal Law

When determining what constitutes "clearly established Federal law" under § 2254(d)(1), federal courts look to United States Supreme Court holdings at the time of the state court's decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). A state court's decision is "contrary to" clearly established United States Supreme Court precedent if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Lockyer*, 538 U.S. at 73; *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003), *overruled in part on other grounds by Lockyer*, 538 U.S. 63. A state court decision does not have to cite to or even demonstrate an awareness of clearly established Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradict such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002).

### B.   Unreasonable Application of Federal Precedent

A state court decision may involve an "unreasonable application" of

1 Supreme Court precedent "if the state court identifies the correct
2 governing legal rule from [the Supreme] Court's cases but unreasonably
3 applies it to the facts of the particular state prisoner's case." *Williams*,
4 529 U.S. at 407. Alternatively, an unreasonable application may be
5 found "if the state court either unreasonably extends a legal principle
6 from [Supreme Court] precedent to a new context where it should not
7 apply or unreasonably refuses to extend that principle to a new context
8 where it should apply." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).
9 An unreasonable application of federal law requires the state court
10 decision to be more than incorrect or erroneous. *Lockyer*, 538 U.S. at 75.
11 Instead, the state court's application must be "objectively unreasonable."
12 *Id.* Petitioner bears the burden of proving the state court acted in an
13 unreasonable, or contrary manner. *Woodford v. Visciotti*, 537 U.S. 19,
14 21-22 (2002).

### C. Unreasonable Determination of the Facts

16 "Factual determinations by state courts are presumed correct
17 absent clear and convincing evidence to the contrary." 28 U.S.C. §
18 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A petitioner
19 must present clear and convincing evidence to overcome § 2254(e)(1)'s
20 presumption of correctness; conclusory assertions will not suffice.
21 *Miller-El*, 537 U.S. at 340. Under 28 U.S.C. § 2254(d)(2), a state court
22 decision "based on a factual determination will not be overturned on
23 factual grounds unless objectively unreasonable in light of the evidence
24 presented in the state-court proceeding." *Id.*

### D. "Look-Through" Doctrine

26 Where there is no reasoned decision from the state's highest court,
27 the Court "looks through" to the last reasoned state court decision. *Y1st*
28 *v. Nunnemaker*, 501 U.S. 797, 801–806 (1991); *Van Lynn v. Farmon*, 347

1 F.3d 735 (9th Cir. 2003). When the state court does not supply reasoning
2 for its decision, an independent review of the record is required to
3 determine whether the state court clearly erred in its application of
4 controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir.
5 2000). This independent review is not *de novo*. *Id*. Although the federal
6 court independently reviews the record, it defers to the state court's
7 ultimate decision. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## V. DISCUSSION

9 In his Petition for Habeas Corpus, Petitioner claims that his guilty
10 plea was coerced by his counsel and the prosecutor. (ECF No. 1 at 2).
11 Petitioner and his brother were each charged with attempted carjacking,
12 three counts of robbery, two counts of assault likely to produce great
13 bodily injury, and two counts of battery. (Lodg. No. 5 at 4). Without a
14 plea deal, Petitioner was facing up to 47 years, 8 months in prison if
15 convicted at trial. (Lodg. No. 10 at 22-23). Petitioner initially rejected all
16 of the prosecutor's plea offers and expressed his desire to go to trial.
17 (Lodg. No. 5 at 4). Petitioner later accepted a "package deal" that
18 required both Petitioner and his brother to plead guilty. (*Id*. at 5). The
19 package deal reduced Petitioner's sentence to 15 years. (Lodg. No. 10 at
20 23). If either Petitioner or his brother did not accept the deal, both would
21 face trial on all charges and Petitioner's brother would face additional
22 charges stemming from an incident at the detention facility in which he
23 was incarcerated. (*Id*. at 30-31). These convictions could have resulted
24 in a life sentence for Petitioner's brother pursuant to California's three
25 strikes law. (*Id*. at 31).

26 Petitioner rejected the package plea deal before he learned of the
27 potential consequences to his brother if he rejected it. (Lodg. No. 10 at
28 26, 32-33). At Petitioner's change of plea hearing, Petitioner indicated he

would like to go to trial, but his brother's potential life sentence was "the only thing that bother[ed]" him. (*Id.* at 32). The court cautioned Petitioner about the relevance of the potential additional charge against his brother, saying "That has nothing to do with him–. . . I don't know how much that should factor into [Petitioner's] thinking." (*Id.* at 28). Petitioner responded "[i]t matters to me, your honor." (*Id.*).

Both the court and Petitioner's brother encouraged Petitioner not to consider his brother in accepting or rejecting the deal. (*Id.* at 32). In open court, Petitioner's brother specifically stated "It's up to you. Whatever you want to do. I signed it. I want you to sign it because you want, not because of me." (*Id.*). The court reiterated to Petitioner that Petitioner's brother did not mind spending life in prison and that it was "really [Petitioner's] call." (*Id.* at 33). Ultimately, Petitioner accepted the guilty plea and pled guilty to three counts of robbery. (*Id.* at 40; ECF No. 1 at 2). Immediately after verbally accepting the plea deal, Petitioner stated "I did it for [my brother], not for myself." (Lodg. No. 10 at 33).

During the subsequent plea colloquy, the court asked, "has anybody made any other promises to you to get you to enter this plea?" and Petitioner responded "No." (*Id.* at 41). The court also asked "You are entering this plea freely and voluntarily?" to which Petitioner replied "Yes." (*Id.* at 42).

A month after pleading guilty, Petitioner sought to withdraw his guilty plea, claiming that his attorney pressured him into signing the plea agreement. (Lodg. No. 5 at 7). The trial court denied Petitioner's motion to withdraw his guilty plea. (*Id.* at 9). Petitioner appealed. (Lodg. No. 2). The Court of Appeal held that Petitioner failed to carry his burden to show that the trial court abused its discretion when it denied his motion. (Lodg. No. 5 at 12). The Court of Appeal found that the trial

court also properly exercised its discretion when it rejected Petitioner's claim that he was coerced to accept the guilty plea because he took the deal "out of love for his younger brother." (*Id.* at 13). The court held that Petitioner failed to establish by clear and convincing evidence that his plea was involuntary because it was the result of undue pressure. (*Id.* at 12). Further, the court held that the fact "that [Petitioner] may have felt pressured to take this offer because of his brother's predicament does not render his plea involuntary." (*Id.* at 13).

On habeas review, this Court must review the Court of Appeal decision to determine whether it was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d).

Under federal law, to be valid, a guilty plea must be both voluntary and intelligent. *See Boykin v. Alabama,* 395 U.S. 238, 242 (1969). To determine voluntariness and intelligence, the court must look at all relevant circumstances and evaluate "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31 (1970). "A plea is 'involuntary' if it is the product of threats, improper promises, or other forms of wrongful coercion." *United States v. Hernandez*, 203 F.3d 614, 619 (9th Cir. 2000), *overruled on other grounds by Indiana v. Edwards*, 554 U.S. 164 (2008). Generally, a guilty plea is void if it was "induced by promises or threats which deprive it of the character of a voluntary act." *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995) (quoting *Machibroda v. United States,* 369 U.S. 487, 493).

When a defendant denies any threats or coercions during the plea colloquy, "[c]ourts generally consider such responses to be strong indicators of the voluntariness of the defendant's guilty plea." *Sanchez*, 50 F.3d at1455. "Solemn declarations in open court carry a strong

1 presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A
2 defendant's representations at a plea hearing, "as well as any findings
3 made by the judge accepting the plea, constitute a formidable barrier in
4 any subsequent collateral proceedings." *Id.*

5 Petitioner had the choice between the offered package deal, which
6 reduced his sentence to 15 years, and a trial where his potential exposure
7 was almost 50 years. (Lodg. No. 10 at 23). After Petitioner and his
8 brother agreed to take the plea deal, Petitioner's brother's attorney
9 described the case against them as "not a very defensible case," and
10 stated that there is at least one witness who likely "would give the jury
11 very little pause in reaching guilty verdicts and true findings on all the
12 charges." (*Id.* at 34). As Petitioner was facing almost 50 years in a case
13 that was difficult to defend, it appears Petitioner made an intelligent
14 decision in accepting the 15 year sentence.

15 Though Petitioner expressed concern about his brother before
16 accepting the plea deal, Petitioner denied coercion from any parties at
17 the change of plea hearing. (Lodg. 10 at 33, 41-42). In addition to his
18 declarations in court denying any coercion or threats, Petitioner also
19 signed his change of plea form and initialed the box next to the statement
20 "I am entering my plea freely and voluntarily, without fear or threat to
21 me or anyone closely related to me." (Lodg. No. 1 at 52).

22 As stated above, under federal law, to be valid, a guilty plea must
23 be voluntary and intelligent. *See Boykin*, 395 U.S. at 242. Though
24 Petitioner claims he pled guilty only to help his brother, Petitioner's
25 brother insisted that Petitioner only think about himself (Petitioner)
26 when deciding to accept or reject the plea deal. (Lodg. 10 at 32). Both
27 Petitioner's brother and the trial judge explained to Petitioner that
28 signing the plea deal was Petitioner's decision. (*Id.* at 32-33). Petitioner

1  appears to have considered his brother's fate in accepting the plea deal,
2  but was free to choose to accept or reject the plea deal.  There is no
3  indication on the record that the acceptance of this deal was involuntary.
4  Ultimately, Petitioner got the benefit of his bargain: a sentence reduced
5  to 15 years from a potential of almost 50, and charges dismissed against
6  both himself and his brother.  Thus, this Court finds that Petitioner's
7  guilty plea was voluntary and intelligent and that the Court of Appeal's
8  decision was not contrary to, or an unreasonable application of, federal
9  law.
10     Accordingly, this court recommends the Petition for Writ of Habeas
11 Corpus be **DENIED**.

## VI.  CONCLUSION

13     For the foregoing reasons, **IT IS HEREBY RECOMMENDED**
14 that the District Court issue an Order **DENYING** Petitioner's Petition
15 for Writ of Habeas Corpus.
16     **IT IS HEREBY ORDERED** that any written objections to this
17 Report must be filed with the Court and served on all parties no later
18 than December 12, 2013.  The document should be captioned "Objections
19 to Report and Recommendation."
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

1 **IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than December 26, 2013. The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

IT IS SO ORDERED.

DATED: November 21, 2013

*Mitchell D. Dembin*
Hon. Mitchell D. Dembin
U.S. Magistrate Judge